UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CARLO ELISCA CEROME,

                         Petitioner,                         **MEMORANDUM & ORDER**

      -against-                                               08-CV-04019 (NGG)

UNITED STATES OF AMERICA,

                         Respondent.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

On September 28, 2008, Petitioner Carlo E. Cerome filed the instant Petition, *pro se*, seeking relief under 28 U.S.C. § 2255. (See Petition (Docket Entry # 1).) Cerome's Petition is premised exclusively on the claim that his trial counsel provided constitutionally ineffective assistance. Specifically, Cerome argues that his trial counsel: (1) failed to call certain witnesses; (2) slept through potions of trial; (3) failed to move to suppress evidence recovered from Cerome at the time of his arrest; (4) failed to advise Cerome about a possible plea offer; (5) failed to move to dismiss one of the charges; (6) failed to timely move to dismiss an indictment based on the Speedy Trial Act; (7) failed to argue that Cerome's sentencing violated Blakely v. Washington, 542 U.S. 296 (2004); (8) failed to challenge the sentencing court's restitution order; and (9) failed to argue for a departure from the applicable Sentencing Guidelines range. (See Pet. Mem. (Docket Entry # 2) at 2-3.) For the reasons set forth below, Cerome's Petition is denied.

I.     **PROCEDURAL BACKGROUND**

On September 24, 2004, a grand jury sitting in the Eastern District of New York returned a Second Superseding Indictment (the "Indictment") against Cerome and Charles Hilaire. (See

1

United States v. Carlo Cerome, No. 03-CR-1312 (ERK), Docket Entry # 37).)[1] Cerome and Hilaire were charged with two counts of conspiracy to commit robbery and one count of robbery (the "robbery counts"), in violation of 18 U.S.C. § 1951(a); and one count of possessing a firearm in furtherance of a crime of violence (the "§ 924(c) count") in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (Id.)

On October 7, 2005, a jury convicted Cerome on the three robbery counts and acquitted him on the § 924(c) count. (Jury Verdict (03-CR-1312, Docket Entry # 91).) Hilaire was convicted on all four counts. (Id.) On April 7, 2006, Judge Edward R. Korman sentenced Cerome to an 84-month term of imprisonment, 3 years supervised release, restitution in the amount of $20,700.81, and a $300 special assessment. (Judgment (03-CR-1312, Docket Entry # 9).)

Cerome's trial counsel, Edward Hamlin, appealed Cerome's conviction and sentence to the Court of Appeals for the Second Circuit. Cerome also filed a *pro se* supplemental brief with the Second Circuit. In a decision dated May 7, 2008, the Second Circuit rejected all of Cerome's claims and affirmed his conviction and sentence. United States v. Cerome, 2008 WL 1995004 (2d Cir. May 7, 2008). Cerome timely filed his § 2255 Petition on September 28, 2008. (See Petition.)

## II.    FACTUAL BACKGROUND

The Government's case largely arose from the interception of telephone communications involving Cerome's co-defendant, Charles Hilaire. (See Gov't Opp. (Docket Entry # 5) at 4.) On October 16, 2003, this court authorized the Government to intercept those communications based on probable cause that Hilaire was involved in narcotics trafficking. (See id.) From October 25,

---

[1] A grand jury returned an original (03-CV-1312, Docket Entry # 13) and first superseding indictment (03-CV-1312, Docket Entry # 37) against Hilaire and Cerome on December 9, 2003 and September 17, 2004, respectively.

2003 through October 31, 2003, the Government intercepted a number of calls during which Cerome, Hilaire, and others discussed the planning and execution of the robbery of an employee of Chou Chou Services, a money transfer business in Brooklyn. (Id.)

In November 2003, investigating agents spoke to the victim, who confirmed that two unknown individuals accosted him on October 31, 2003, in the vicinity of East 22nd Street and Avenue U in Brooklyn, and robbed him at gunpoint. (Id.) After the robbery, Government agents intercepted additional calls between Cerome and Hilaire during which they discussed committing another robbery. (Id.) Believing that a second robbery was imminent, the agents arrested both Cerome and Hilaire on November 12, 2003. (Id.)

The Government's evidence at trial included the testimony of the robbery victim, Denis Antoine, the recording of the 911 call Antoine made immediately after the robbery, surveillance photographs and other documentary evidence, recordings of numerous intercepted calls involving Cerome, and the testimony of law enforcement officers. (See generally id. at 6.)

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a court may "vacate, set aside or correct" a conviction or sentence "imposed in violation of the Constitution or laws of the United States." But "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b). In § 2255 proceedings, a petitioner bears the burden of proof by a preponderance of the evidence. See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000). "The pleadings of a *pro se* plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'" Graham v.

3

Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

IV. DISCUSSION

A. Standard for Ineffective Assistance

To prevail on an ineffective assistance claim, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that the deficient performance prejudiced the [petitioner]." Strickland v. Washington, 466 U.S. 668, 697 (1984). The first prong of the Strickland test "requires [a] showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." Id. at 687. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," Strickland, 466 U.S. at 690-91, even where counsel adopts "a course of action (or inaction) that seems risky, unorthodox or downright ill-advised." Tippins v. Walker, 77 F.3d 682, 686 (2d Cir. 1996). "[A] strategic decision is a conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004).

Strickland's second prong requires that a petitioner show actual prejudice. To show actual prejudice, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Because the petitioner bears the burden of proof on both prongs of the test, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one." Id. at 697.

## B. Alleged Failure to Call Certain Witnesses

Cerome asserts that Hamlin provided ineffective assistance because Hamlin failed to call two witnesses, whom Cerome identifies as "Rodney Jones" and "Mr. Baggio." (Pet. Mem. 5-6, 13-15.) Because Cerome has not identified any material evidence that either witness would have offered, his claim fails under both prongs of Strickland.

To establish constitutionally deficient performance based on counsel's failure to call witnesses, a petitioner must identify the witnesses counsel should have called and make a showing that their testimony would have been helpful to his defense. See United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). But "the decision to call or bypass particular witnesses is peculiarly a question of trial strategy, which courts will practically never second-guess." United States ex rel. Walker v. Henderson, 492 F.2d 1311, 1314 (2d Cir. 1974); see also United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (noting that courts are "ill-suited" to evaluate matters of trial strategy).

Cerome claims that an investigator named Rodney Jones prepared an affidavit for Hamlin in which Jones stated that Antoine was not an employee of Chou Chou Services, but actually worked for a Postal Express store. (Pet. Mem. 5.) Cerome has not submitted the alleged affidavit and has provided no evidence that it exists. In any event, even if Cerome accurately describes the contents of the claimed affidavit, he has not provided any persuasive reasons that Jones's testimony would have been material to his defense. Moreover, even if Jones could have provided helpful testimony, there might well have been countervailing reasons for Hamlin to choose not to call the investigator.

Cerome also claims that Hamlin should have called a second witness, whom he identifies only as "Mr. Baggio." (Id. at 13.) According to Cerome, Baggio worked for a different money

5

transfer business and would have testified that the co-owners of that business engaged in a scheme to falsely claim that they had been robbed. (Id. at 13-14.) Cerome claims that this testimony would have supported his theory "that there was no robbery but an inside job." (Id. at 4.) Even if Cerome's factual allegations are credited, however, such testimony would likely have been inadmissible. See Fed. R. Evid. 401 (setting forth standard for relevance). The testimony was not material enough that counsel's decision not to pursue it was objectively unreasonable.

Finally – even assuming that counsel's decision not to call these witnesses was objectively unreasonable – Cerome's claims fail under Strickland's second prong because there is no reasonable probability that, but for counsel's decision, the result of the trial would have been different. The Government presented overwhelming evidence of Cerome's guilt – including incriminating wiretaps – with respect to all three of the charges of which Cerome was convicted. See United States v. Hasan, 586 F.3d 161, 170 (2d Cir. 2009) (overwhelming evidence precluded finding of prejudice); Wise v. Smith, 735 F.2d 735, 739 (2d Cir. 1984) (same). Consequently, Cerome's claims of ineffective assistance based on counsel's decision not to call certain witnesses are without merit.

C.  **Sleeping During Trial**

Cerome next claims that his trial counsel slept through portions of the trial. (Pet Mem. 16-18.) The Second Circuit has found that a defendant suffers prejudice under Strickland if "his counsel was repeatedly unconscious at trial for periods of time in which defendant's interests were at stake."[2] Tippins v. Walker, 77 F.3d 682, 687 (2d Cir. 1996). This is the case because

---

[2] The lawyer in Tippins slept for significant portions of each day of a twelve day trial. Tippins, 77 F.3d at 687. The trial judge halted Tippins's trial on at least one occasion and called all of the attorneys out into the hallway in order to rouse the attention of the defendant's lawyer. Id.

the "buried assumption" in cases interpreting Strickland – that "counsel is present and conscious to exercise judgment, calculation and instinct, for better or worse" – is not available when counsel is unconscious during important portions of a trial. Id. Nonetheless, where a petitioner alleges isolated "episodes of inattention or slumber," he must also adduce specific instances of prejudice. Id. at 686; Ortiz v. Artuz, 113 F. Supp. 2d 327, 342 (E.D.N.Y. 2000) (distinguishing showing required in such circumstances).

Prior to filing his Petition, Cerome does not appear to have ever alleged that his counsel slept at trial, despite raising certain claims *pro se* at sentencing and filing a *pro se* brief on appeal. Moreover, Cerome's Petition does not specify any particular portion of trial during which Hamlin was actually asleep. In his response to the Government's submission, Cerome claims "Petitioner slept considerably everyday of Petitioner's trial" and that, "at different occasions, [Cerome] had to wake Mr. Hamlin." (Pet. Traverse (Docket Entry # 6) at 12.)[3]

There is, however, no support in the record for any of Cerome's belated claims of attorney slumber. Cerome did not complaint to Judge Korman about his counsel sleeping at trial. At sentencing Judge Korman complimented defense counsel on the "very fine job" that he had done representing Cerome. (Gov't Appendix ("GA") (Docket Entry ## 5-1, 5-2) at 300-02.) Cerome also chose to keep his trial counsel as his lawyer on appeal. Nonetheless, even assuming that there were limited periods of the trial during which Hamlin did sleep, Cerome has failed to demonstrate that it affected his defense in any way. Accordingly, Cerome's claim fails under the second prong of Strickland. See Tippins, 77 F.3d at 686; Ortiz, 113 F. Supp. 2d at 342.

---

[3] These factual allegations should have been raised in Cerome's Petition or initial Memorandum of Law. See Rules Governing § 2255 Proceedings for the United States District Courts, Rule 2. The court nonetheless considers their credibility in light of the overall record.

7

### D. Fourth Amendment Claims

At trial, the Government offered into evidence a cellular telephone seized from Cerome's person immediately following his arrest, as well as Cerome's post-arrest statements that two phone numbers belonged to him and that he was on the telephone multiple times on October 31, 2003, the day of the robbery. (See GA 216-19.) Cerome argues that Hamlin's failure to move before trial to suppress this evidence constituted ineffective assistance of counsel. (Pet Mem. 6-12.)

Cerome concedes that he was arrested in the threshold of the door of his home, after he opened the door in response to a doorbell. (Id. at 8.) "[T]he warrantless arrest of an individual in a public place upon probable cause [does] not violate the Fourth Amendment." United States v. Santana, 427 U.S. 38, 42 (1976). The threshold of an open door of a dwelling is considered a public place. Id. Cerome asserts that some portion of his property was surrounded by a fence. (Pet. Mem. 9.) This does not change the Fourth Amendment analysis, however, because there is no allegation that the agents departed from the normal route of visitor access. See United States v. Titemore, 437 F.3d 251, 260 (2d Cir. 2006).

In his Traverse, Cerome also claims that he was "coerced" out of his home by several calls from Government agents. He does not provide any evidence for this belated claim of coercion, which is not credible under the circumstances. In any event, however, Cerome does not describe any threat by the Government sufficient for a finding that he was constructively arrested in his home. See United States v. Gori, 230 F.3d 44, 51 (2d Cir. 2000); Maloney v. County of Nassau, 623 F. Supp. 2d 277, 287 (E.D.N.Y. 2007).

Because any suppression motion based on the Fourth Amendment would almost certainly not have succeeded, Hamlin's choice not to file such a motion was not objectively unreasonable. Moreover, the evidence obtained in connection with Cerome's arrest was cumulative of other evidence that the Government obtained from other sources, including phone company records. (GA 202-08.) As such, this claim also fails under Strickland's second prong.[4]

E. **Plea Offer**

Cerome next claims that Hamlin was ineffective because he failed to advise him of a plea agreement offered by the Government. (Pet. Mem. 19-21.) In support of this argument, Cerome identifies a portion of the trial transcript where, in a sidebar, a prosecutor referred to a possible sentence of 46 to 57 months. (Id. at 19-21.) The Government persuasively explains, however, that there was only a single plea offer, under which Cerome would have faced a total Guidelines range of 125 to 135 months and that the prosecutor was only referring to the portion of that sentence attributable to the robbery counts. (See Gov't Opp. 40.) Because there is no evidence of any other plea agreement, Cerome's claim that Hamlin was ineffective in failing to disclose a plea agreement is without merit.

F. **Dismissal of § 924(c) Count**

Cerome next argues that Hamlin should have moved before trial to dismiss the § 924(c) count of which Cerome was ultimately acquitted. (Pet. Mem. 21.) To survive such a motion, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Alfonso, 143 F.3d

---

[4] Cerome also argues in his Traverse that Hamlin should have sought to suppress the wiretap evidence because Cerome was not named in the original authorizing order or subsequently added, in violation of 18 U.S.C. § 2516. (Pet. Traverse 4-6.) But amendment is not required where a wiretap captures the conversations of previously unidentified conspirators involved in an offense covered by a wiretap order. United States v. Principie, 531 F.2d 1132, 1137 (2d Cir. 1976).

9

772, 776 (2d Cir. 1998) (internal quotation omitted.) Cerome has not identified any basis on which Hamlin could have mounted a successful challenge to the inclusion of the § 924(c) count in the Indictment. Accordingly, Cerome has not shown that Hamlin acted unreasonably in choosing not to file such a motion and this ineffective assistance claim must be denied.[5]

### G. Speedy Trial Act Claim

The Speedy Trial Act provides that a defendant must be tried within 70 days of the filing of an indictment. 18 U.S.C. § 3161(c). Cerome asserts that Hamlin unreasonably failed to object to a violation of the Speedy Trial Act. (Pet. Mem. 22-24.) Cerome's argument – although not fully explained until his Traverse – is based on his claim that, in granting several continuances, the trial court did not make the requisite finding under 18 U.S.C. § 3161(h)(7)(A) that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." (See Pet. Traverse 10-11.)

In <u>Zedner v. United States</u>, 547 U.S. 489 (2006), the Supreme Court held that "if a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted" toward the 70-day period. Id. at 508. The Second Circuit has, however, held that a lawyer who failed to anticipate <u>Zedner</u> before it was decided and therefore did not raise a Speedy Trial Act claim was not constitutionally ineffective. <u>Parisi v. United States</u>, 529 F.3d 134, 141 (2d Cir. 2008). Accordingly, this claim of ineffective assistance is also without merit.

### H. <u>Blakely</u> Claim

Cerome next argues that Hamlin was ineffective in failing to assert that his sentencing involved impermissible judicial fact-finding under <u>Blakely v. Washington</u>, 524 U.S. 296 (2004).

---

[5] It is also difficult to imagine how Cerome possibly could have been prejudiced, given that he was acquitted of the § 924(c) count.

(Pet. Mem. 24-29.) The Supreme Court specifically rejected this argument in United States v. Booker, 543 U.S. 220 (2005). Pursuant to Booker and its progeny, the facts corresponding to a particular Guidelines range do not need to be found by a jury beyond a reasonable doubt, as long as that range is below the statutory maximum. See, e.g., United States v. Ahders, 622 F.3d 115, 119 (2d Cir. 2010); United States v. Garcia, 413 F.3d 201, 220 n.15 (2d Cir. 2005) ("Judicial authority to find facts relevant to sentencing by a preponderance of the evidence survives Booker."). Because Petitioner's sentence was below the statutory maximum, no motion based on Blakely would have succeeded and this ineffective assistance claim is without merit.

I. **Non-Guidelines Sentence**

Cerome argues that his counsel provided ineffective assistance in failing to argue for a non-Guidelines sentence based on "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." (Pet. Mem. 30-33) (citing 18 U.S.C. §3553(a)(6).) The basis for this claim is Cerome's belief that it was unfair that Hilaire effectively received a lesser sentence for the same robbery counts.

Cerome received a five-level Guidelines enhancement under U.S.S.G. § 2B3.1(b)(2)(B) for brandishing or possessing a firearm during a robbery. (See GA 298-99.) That enhancement did not apply to Hilaire, who was subject to a mandatory minimum term of imprisonment under 18 U.S.C. § 924(c). Hilaire was sentenced to a total term of imprisonment of 120 months, significantly more than Cerome – who was acquitted on the § 924(c) count. Accordingly, there was no unwarranted disparity in their sentences. Nonetheless, at sentencing, Cerome made the same argument that he now criticizes Hamlin for not articulating. (GA 298-99.) Judge Korman attempted to explain why Cerome was mistaken. (Id.) Cerome's argument regarding a

11

sentencing disparity has no greater basis in law now than it did at the time of his sentencing. This claim of ineffective assistance fails under both prongs of Strickland.

J. **Restitution**

Cerome claims that trial counsel was ineffective in failing to object to the restitution portion of his sentence. (Pet. Mem. 29-30.) Judge Korman ordered Cerome to pay $20,700.81 in restitution, the amount that Cerome and his co-conspirators stole from the victim in this case. Cerome asserts that his counsel should have argued that Cerome was not responsible for the full loss because he was only one member of a conspiracy. (Id. at 29-30.) The court lacks jurisdiction to hear this claim, however, because a § 2255 petition may not be used to challenge noncustodial payments such as restitution. See Kaminski v. United States, 339 F.3d 84, 87 (2d Cir. 2003).[6]

K. **Immigration Proceedings**

Cerome has also asked the court to intervene in immigration removal proceedings that were proceeding against him. (See Docket Entry # 10.) To the extent that Cerome continues to seek this relief, this court does not have jurisdiction to grant it. Under the Immigration and Naturalization Act, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." (Id.) 8 U.S.C. § 1252(g). There is an exception for cases involving "constitutional claims or questions of law." Id. § 1252(a)(2)(D). But that exception confers jurisdiction over such claims to the Courts of Appeals, and only once an alien has exhausted administrative remedies. See Ajlani v. Chertoff, 545 F.3d 229, 235 (2d Cir.

---

[6] The court notes, however, that Cerome's claim would almost certainly fail on the merits. Under the Mandatory Victims Restitution Act, a sentencing court is authorized in crimes involving more than one defendant "to make each defendant liable for payment of the full amount of restitution." 18 U.S.C. § 3664(h).

12

2008); Lopez Patino v. Chertoff, 595 F. Supp. 2d 310, 313 (S.D.N.Y. 2009). Accordingly, Cerome's request for a stay of removal proceedings must be denied.

## V. CONCLUSION

For the foregoing reasons, Cerome's Petition is DENIED. His request for an order staying immigration proceedings is also DENIED. Because Cerome has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c)(2); Lozada v. United States, 107 F.3d 1011 (2d Cir. 1997). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
January 12, 2011

NICHOLAS G. GARAUFIS
United States District Judge